Filed 7/20/21  P. v. Boror CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>RUDOLPH MILTON BOROR,<br><br>     Defendant and Appellant. | A160582<br><br>(City & County of San Francisco Super. Ct. Nos. CT2514821/ SCN75808) |

In 1970, Rudolph Milton Boror, one of four participants in a burglary and robbery that ended in the death of Darel Carter, was convicted of first degree murder.  (Pen. Code, § 187.)[1]  In 2019, Boror petitioned the trial court for resentencing under section 1170.95.  After issuing an order to show cause and holding an evidentiary hearing, the trial court denied the petition.  Boror raises a single issue on appeal—that the trial court misunderstood the nature of its role at the evidentiary hearing stage and applied the wrong legal standard to deny his petition.  We conclude the trial court did not err, and we affirm.

---

[1] All further statutory references are to the Penal Code.

## BACKGROUND

**The Facts[2]**

On August 1, 1969, Darel Carter was killed in the home of his parents, George and Theresa Carter, in the course of a burglary and robbery perpetrated by Boror, Paul Jones, Jr., and brothers, Samuel and Michael Craig.[3] These are the facts leading to the killing.

Darel and his fiancée, Edna Beuchat, had dinner at the Carter residence that evening. At around 11:00 p.m., Darel asked George to help him load an item into his car parked outside. As they exited the front door, Darel and George encountered a group of people standing on the porch of the Carter home. The group of people included Boror, Jones, Samuel, and Michael, as well as Jones's sister, Sharon Williams, all of whom had just attended a party at the home of Betty Walker next door.

George and Jones exchanged words, with George calling the group on the porch a racial epithet. George and Darel were white and the people they encountered were black. A fight ensued. George was hit in the back of the head. Beuchat heard yelling from outside and when she looked out the window, she saw a group of people hitting and punching Darel in the head and upper body. Beuchat rushed to the telephone and called the police.

---

[2] We granted Boror's request to augment the record to include the transcripts of the trial, as well as status conferences related to the section 1170.95 petition. We derive the facts of the underlying offenses from the trial transcripts.

[3] To avoid confusion, we refer to the Carter family members and Craig brothers by their first names. We also note the record on appeal includes different spellings for the first name of the decedent. We will refer to him as "Darel," which is the spelling used in the indictment and the prior opinion of Division Three of our First District in *People v. Jones, et al.* (Jul. 26, 1971, 1 Crim. No. 8937) [nonpub. opn.] (*Jones*).)

2

George and Darel ran back into the home and were followed by Boror, Jones, Samuel, and Michael. As George and Darel reached the vestibule area, Boror, Jones, Samuel, and Michael delivered blows on George and Darel. Samuel felt a knife go in his hand when he tried to grab Jones during the altercation.

Williams testified at trial that when Darel and George were in the vestibule, she saw Jones hit Darel, knocking him down. Williams then saw Boror straddle Darel, who was lying on his back, and stabbed him with a knife. Boror had shown Williams a knife earlier that night.

Beuchat, who was in the living room upstairs, heard voices and people shuffling downstairs. Michael then went upstairs. Shortly behind Michael was George, who was being followed by Jones. Jones was carrying a knife. Boror and Samuel were behind them.

Boror entered a bedroom, and Theresa followed. Theresa saw Boror going through drawers and asked Boror what he was looking for. Boror said he was looking for money and then hit Theresa on her arm, knocking her over. Boror also asked Theresa to give him her watch and ring. She did, and Boror and Samuel left the bedroom.

Jones, while shoving George, went to the living room where Beuchat was. George was bleeding around his face and his ear was badly cut. Beuchat saw Jones holding a knife. Jones threatened to kill George if he moved. Jones also threatened to kill Beuchat and asked her to give him all the money in her purse. Beuchat complied. Jones turned to George and told him he wanted the rest of the money. George then led Jones to another room to get the money.

Boror and Samuel then walked into the living room. Boror and Samuel asked Beuchat where the rest of the money was, and Beuchat pointed them

3

to Theresa's purse. After Boror and Samuel ransacked Theresa's purse, they left the living room and went toward the back of the house.

Jones returned to the living room, still holding a knife. Jones told Beuchat to take her clothes off and lie down, and, when she complied, ripped off her blouse and forced her to engage in sexual intercourse and oral copulation.

Meanwhile, Michael and Samuel had gone back to Walker's house. After seeing Samuel's hand had been cut, Walker went outside to see what was going on. Walker went up to the front door of the Carter house and saw both Jones and Boror kicking people. Walker screamed at them to come out of the house and stop, but Jones and Boror continued "[b]eating whatever they was beating in the corner." Walker heard the sound of "thumps" from the blows. Walker returned to her house and then back to the Carter home, where she saw Jones and Boror still beating the men on the ground. Walker again screamed out to them "[t]hat if they didn't get the hell out of there that [she] was going to call the police." Walker ran back to her house and called the police.

Williams testified that after she saw the stabbing, she returned to Walker's, and later walked back to the front of the Carter residence, where she also saw Boror kicking Darel in the head as he was lying on the floor.

Boror and Jones finally left the Carter home and returned to Walker's. Regarding what just happened next door, Boror told Walker that "he wasn't going to let no whitey jump on his brother." Boror also said to Williams, "I stabbed me a white man."

The next day, Boror told his acquaintance, Teresa Martin, that he had stabbed a man. When Martin asked Boror if Jones also stabbed someone, Boror replied that Jones beat up a man but did not stab him.

According to police, Walker stated she saw Jones stab Darel with a knife. But, at trial, Walker testified she did not see a knife in Jones's hand. And when asked if "the blows that Mr. Jones was inflicting . . . were . . . in the same direction as where [she] saw the portion of Darel Carter's body by the door," Walker testified, "no," and that Jones was in a different corner.

Darel sustained multiple injuries, including two stab wounds and bruising from multiple blows to his body, and later died from the stab wound to his lower abdomen.

**The Proceedings Below**

On August 21, 1969, an indictment charged Boror with murder (§ 187) (count one); assault with intent to commit murder (former § 217) (count two); burglary (§ 459) (count three); robbery of Darel, Theresa, George, and Beuchat (§ 211) (counts four, five, six, and seven); and aiding and abetting Jones in the commission of rape (former § 261.4) (count eight).

Following a trial, a jury found Boror guilty of first degree murder; first degree burglary; two counts of first degree robbery; one count of second-degree robbery; and assault with a deadly weapon. Boror was found not guilty of the remaining count of robbery and aiding and abetting Jones in the commission of rape. The trial court sentenced Boror to a term of life in prison on the murder count.[4] Boror was also sentenced to prison terms on the other convictions, to run concurrently with the life sentence.

Division Three of our First District affirmed the judgment in an unpublished decision.[5] (*Jones, supra*, 1 Crim. No. 8937.)

---

[4] The record indicates Boror was sentenced to life with the possibility of parole.

[5] Jones and Samuel were also found guilty of first degree murder in addition to the related burglary and robbery charges. Boror, Jones, and Samuel separately appealed the judgment, but Boror did not file an opening

**Resentencing**

On March 7, 2019, Boror petitioned to vacate his murder conviction and obtain resentencing under section 1170.95, which was enacted as part of Senate Bill No. 1437 (2017–2018 Reg. Sess.) and took effect January 1, 2019. (Stats. 2018, ch. 1015, § 4.) Boror checked several boxes on the printed form petition establishing his eligibility for resentencing relief, including the boxes stating he had been convicted under the felony murder rule and could now not be convicted of first or second degree murder because of changes to sections 188 and 189 made by Senate Bill No. 1437.

The People filed a response to Boror's petition. Recounting the evidence at trial, the People asserted either Boror or Jones killed Darel, without taking a position on who between the two was the actual killer. The People also argued that the non-killer—be it Boror or Jones—aided and abetted in the killing, and that each was a major participant in the underlying felonies and acted with reckless indifference to human life. Boror filed a reply to the People's response, stating he had made a prima facie showing he is entitled to relief under section 1170.95.

The trial court found Boror had met his prima facie burden, appointed counsel to represent Boror, issued an order to show cause, and scheduled an evidentiary hearing.

Boror subsequently filed a brief on the merits, refuting the People's contentions that sufficient evidence showed he was guilty of murder under the new requisite elements required for felony murder. The People filed a

---

brief. In its opinion, Division Three addressed arguments specific to Jones and Samuel, but ultimately affirmed the judgments as to Boror, Jones, and Samuel.

reply, arguing along the lines of its prior response that the evidence proved beyond a reasonable doubt that Boror was ineligible for relief.

On June 26, 2020, the trial court conducted an evidentiary hearing, where the attorneys for Boror and Jones were both present.[6] Boror testified on his own behalf. He denied carrying a knife, stabbing Darel, or using any force against either Darel or George, though admitting he testified previously at a parole hearing that he kicked Darel. Boror also denied telling Martin he had stabbed a person that night. Boror claimed it was Jones who stabbed Darel.

After receiving Boror's testimony, the trial court stated it had reviewed the defendants' section 1170.95 petitions and related pleadings, the People's responses, the Court of Appeal's prior opinion, the trial transcripts, and relevant case law. The trial court then stated that "the People have the burden of proof beyond a reasonable doubt," before turning it over to the prosecutor and attorneys for Boror and Jones to argue whether the evidence established each defendant was guilty of felony murder under the new law.

Following that argument, the trial court announced its decision: "I think that the evidence in this case shows to the standard required that Mr. Boror was the actual killer in this case and that would be a theory of liability that the jury could have returned a verdict on felony murder." The trial court found credible Martin's testimony that Boror admitted to her he had stabbed a man and that Jones had only hit a man. The trial court said, "There's no evidence in the record to show why she would lie about that. She obviously was very upset. So upset she had to be removed from the stand that she was

---

[6] At the hearing, the trial court ordered the consolidation of the cases of Boror (Case No. CT2514821) and Jones (Case No. SCN75808), who also filed a section 1170.95 petition.

implicating her friend. So that's pretty powerful evidence." The trial court also noted Williams's testimony that she saw Boror stab Darel, though acknowledging that Williams is Jones's sister and she was impeached at trial for not disclosing her identification of the killer earlier. The trial court also recognized that Walker initially told police that Jones stabbed Darel, but that Walker later disavowed this claim at trial. Thus, the trial court did not find sufficient evidence to establish Jones was the actual killer.

The trial court also found, "Even if the evidence is not sufficient to find that Mr. Boror was not the actual killer, and I think there is sufficient evidence, I believe he was a major participant and acted with reckless indifference."[7] The trial court summarized the facts and holdings of several cases analyzing whether a defendant is a major participant and acted with reckless indifference to life within the scope of the special circumstances statute, including *In re Scoggins* (2020) 9 Cal.5th 667; *People v. Law* (2020) 48 Cal.App.5th 811, review granted July 8, 2020, S262490; *In re Taylor* (2019) 34 Cal.App.5th 543; *In re Loza* (2017) 10 Cal.App.5th 38; *People v. Clark* (2016) 63 Cal.4th 522; and *People v. Banks* (2015) 61 Cal.4th 788. Against this backdrop, the trial court explained its findings: "[I]n terms of proximity to the event, of course, Mr. Boror is right there. He's literally right there according to the most disinterested witness. He's right next to where the stabbing occurs either because he's doing it himself or Paul Jones is doing it but he's right next to Paul Jones." "And, of course, for the duration of the event for the 20 minutes, he's in the house, he's participating in the robbery, riffling through and ransacking the house and participating in the stomping

_____

[7] The trial court also stated, "Arguably, [Boror's] a direct aider and abettor as well to the murder," but it did not state whether it found Boror harbored an intent to kill, an element required under section 189, subdivision (e)(2).

and kicking, of . . . Darell Carter right before the incident ended." "In terms of . . . the duration of the action, I think it's pretty compelling here in this case."

The trial court denied Boror's section 1170.95 petition.

Boror appeals.

## DISCUSSION

### Senate Bill No. 1437 and Section 1170.95

Senate Bill No. 1437, effective January 1, 2019, was enacted to limit the application of the felony-murder rule and murder based on the natural and probable consequences doctrine by modifying the mental state requirements for murder under those theories. (Stats. 2018, ch. 1015, § 1, subds. (f), (g).) The Legislature accomplished this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability. (Stats. 2018, ch. 1015, §§ 2, 3.) As pertinent here, under new subdivision (e) of section 189, "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery and burglary] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer[;] [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[;] [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e).)

Senate Bill No. 1437 also added section 1170.95, which outlines a process through which individuals convicted of felony murder can have their murder convictions vacated and resentenced if they could not have been

9

convicted of murder because of Senate Bill No. 1437's changes to the definition of the crime. (Stats. 2018, ch. 1015, § 4.) The petition must include, among other things, a declaration by the petitioner that he or she is eligible for relief under section 1170.95. (§ 1170.95, subd. (b)(1).) If the petition contains all required information, the trial court "shall issue an order to show cause." (§ 1170.95, subd. (c).)

Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner. (§ 1170.95, subd. (d)(1).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) Both parties "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*) " ' "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

**The Trial Court Applied the Correct Legal Standard**

As quoted, section 1170.95, subdivision (d)(3) states the prosecution at the evidentiary hearing has the burden to prove, "beyond a reasonable doubt, that the petitioner is ineligible for resentencing." Boror's sole contention on appeal is that the trial court applied the wrong legal standard under this subdivision in determining he was ineligible for relief. This raises a question of statutory interpretation subject to our de novo review. (*People v. Alaybue* (2020) 51 Cal.App.5th 207, 214.)

Section 1170.95, subdivision (d)(3) does not clearly identify the standard to be applied by the court to determine if the petitioner is ineligible

10

for resentencing. Boror proposes two different standards are possible. The first is an independent factfinder or trial standard, under which the trial court determines whether the record of conviction and any new evidence introduced at the hearing establish beyond a reasonable doubt that the petitioner could be convicted of murder under amended sections 188 and 189.

The second possible standard is an approach consistent with the rule in "alternative theory error" cases where a general verdict might rest on either of two jury instructions, one legally valid and one legally invalid. Under these cases, reversal is mandatory unless under *Chapman v. California* (1967) 386 U.S. 18, the invalid instruction may be deemed harmless beyond a reasonable doubt. (See *In re Martinez* (2017) 3 Cal.5th 1216, 1221; *People v. Chiu* (2014) 59 Cal.4th 155, 167, superseded by statute as stated in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103, review granted Nov. 13, 2019, S258175; *People v. Chun* (2009) 45 Cal.4th 1172, 1201; *People v. Guiton* (1993) 4 Cal.4th 1116, 1128–1129.)

Boror urges us to hold section 1170.95, subdivision (d)(3), properly interpreted, requires the trial court to apply the second standard to determine ineligibility for resentencing. Thus, Boror argues the trial court should have required the People to prove beyond a reasonable doubt that the jury actually found him guilty of first degree murder on a still valid legal theory, despite being instructed on a theory of culpability that "no longer exists under state law."

We disagree. As Boror acknowledges, his argument in favor of the harmless error standard was rejected in *People v. Rodriguez* (2020) 58 Cal.App.5th 227, review granted Mar. 10, 2021, S266652 (*Rodriguez*). *Rodriguez* explained this standard ran contrary to the statutory scheme in three ways: "First, the harmless error line of cases requires courts to inquire

11

whether 'there is a basis in the record to find that the verdict was based on a valid ground.' [Citation.] That backward looking evaluation is inconsistent with section 1170.95, subdivisions (a)(3) and (d)(3)'s explicit direction to the court to determine if the petitioner could now be convicted of murder under sections 188 and 189 as amended, not whether he or she was, in fact, convicted of murder under a still-valid theory. Second, subdivision (d)(3) permits both parties to present new or additional evidence at the hearing after issuance of the order to show cause. If the superior court's ineligibility ruling may be based on evidence not heard by the original trier of fact, the Legislature cannot have intended the court simply to evaluate the grounds on which the original verdict was reached. Finally, section 1170.95 is available to defendants convicted of murder following a plea in lieu of a trial. Given the limited record in many of those cases, it would be impossible to assess whether a still-valid ground for a murder conviction existed, let alone to determine beyond a reasonable doubt that the valid ground was the basis for the plea. Yet section 1170.95 contemplates the same procedure to determine ineligibility in plea cases as in cases in which the murder conviction was reached at trial." (*Rodriguez*, *supra*, 58 Cal.App.5th at pp. 239–240.)

For the reasons persuasively explained in *Rodriguez,* we decline to adopt Boror's proposed harmless error standard for determining ineligibility under section 1170.95, subdivision (d)(3).

Nor are we convinced by Boror's perfunctory contention that the application of that standard is required in order to preserve his right to trial by jury under the Sixth Amendment. The "retroactive relief [petitioners] are afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis. Rather, the Legislature's changes constituted an act of lenity that does not implicate defendants' Sixth Amendment rights" to a jury trial. (*People v.*

12

*Anthony* (2019) 32 Cal.App.5th 1102, 1156; *People v. Lopez*, *supra*, 38 Cal.App.5th at pp. 1114–1115; *People v. Lopez* (2020) 56 Cal.App.5th 936, 958, review granted Feb. 10, 2021, S265974 (*Lopez*).)

The court in *Rodriguez* held the proper standard of proof at a section 1170.95 subdivision (d)(3) hearing is the first standard set forth above—that "it is the court's responsibility to act as independent factfinder and determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189 and is thus ineligible for resentencing under section 1170.95, subdivision (d)(3)." (*Rodriguez*, *supra*, 58 Cal.App.5th at pp. 243–244.)

In so concluding, the *Rodriguez* court rejected not only the harmless error standard espoused by Boror, but also a third approach that was adopted in *People v. Duke* (2020) 55 Cal.App.5th 113, review granted Jan. 13, 2021, S265309 (*Duke*). (See *Rodriguez*, *supra*, 58 Cal.App.5th at pp. 240–244.) *Duke* held that a trial court must determine whether the prosecution proved " beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder. This is essentially identical to the standard of substantial evidence, in which the reviewing court asks ' "whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*Duke*, *supra*, 55 Cal.App.5th at p. 123.) *Rodriguez* considered the statutory language and legislative history of Senate Bill No. 1437 and, based on that analysis, expressly disagreed with the view adopted in *Duke* for at least three reasons. (See *Rodriguez*, at pp. 240–244.)

First, *Rodriguez* determined that an appellate-type review of the sufficiency of the evidence ran contrary to the legislative purposes of Senate

13

Bill No. 1437. It explained the legislative goal of section 1170.95—to reform "aider and abettor liability in homicide cases to more equitably sentence both past and future offenders in relation to their own actions and subjective mentes reae"—is "best effectuated by resentencing . . . if the evidence, whether from the record of conviction alone or with new and additional evidence introduced at the subdivision (d)(3) hearing, fails to establish beyond a reasonable doubt [petitioner], in fact, acted during the crime with the now-required mental state. To deny resentencing simply because a jury could have found that they may have acted with express malice would frustrate the legislation's purpose." (*Rodriguez*, *supra*, 58 Cal.App.5th at pp. 240–241.)

Second, *Rodriguez* found further support against *Duke* in the explicit reference to the "beyond the reasonable doubt" standard in subdivision (d)(3), the standard of proof considered by the independent factfinder in a criminal trial. (*Rodriguez*, *supra*, 58 Cal.App.5th at p. 242.) The *Rodriguez* court found it unlikely the Legislature would have used the "beyond a reasonable doubt" language in Senate Bill No. 1437 had it "intended only an appellate-type review of the sufficiency of the evidence of the petitioner's guilt on a still-viable theory, rather than requiring the prosecutor to actually establish the petitioner's guilt under the newly amended statutes." (*Rodriguez,* at p. 242.)

Third, *Rodriguez* determined the substantial evidence test does not align with subdivision (d)(3)'s provision authorizing both parties to introduce new or additional evidence at the hearing. (*Rodriguez*, *supra*, 60 Cal.App.5th at p. 242.) The *Rodriguez* court observed, "How is the superior court to evaluate that additional evidence if not as an independent factfinder? It would be pointless for the court's role in this situation simply to be deciding

14

whether a jury *could* credit a new witness's testimony and thus *could* conclude the petitioner had acted with express malice." (*Ibid.*)

Other courts have disagreed with *Duke* and reached the same conclusion in *Rodriguez*, including this court in *People v. Duchine* (2021) 60 Cal.App.5th 798. (See *People v. Duchine*, *supra*, 60 Cal.App.5th at pp. 814–815 ["[t]he [*Duke*] interpretation . . . would mean the prosecution's burden would be to prove 'beyond a reasonable doubt' that 'substantial evidence' exists, which by itself borders on incomprehensible"]; *People v. Clements* (2021) 60 Cal.App.5th 597, 615, review granted Apr. 28, 2021, S267624 ["because the substantial evidence inquiry strips the standard of proof from the reviewing court's analysis, interpreting the statute as directing trial judges to sit as quasi-appellate courts would effectively read the standard of proof out of the provision"]; *People v. Fortman* (2021) 64 Cal.App.5th 217, 226; *People v. Harris* (2021) 60 Cal.App.5th 939, 952–953, review granted Apr. 28, 2021, S267802; *Lopez*, *supra*, 56 Cal.App.5th at p. 949, review granted.)

Our Supreme Court will resolve this split in authority.[8] Pending further guidance from the high court, here, we again follow the growing line of cases concluding that a trial court at the subdivision (d)(3) hearing must act as an independent factfinder and determine—based upon the record

---

[8] In granting review in *Duke*, *supra*, 55 Cal.App.5th 113, review granted Jan. 13, 2021, S265309, the Supreme Court limited the issue to be briefed and argued to the following: "Can the People meet their burden of establishing a petitioner's ineligibility for resentencing under . . . section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under . . . sections 188 and 189 as amended by Senate Bill No. 1437 . . . , or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?"

and/or additional evidence presented by the parties—whether the People have proven beyond a reasonable doubt the petitioner is guilty of murder under the law as of January 1, 2019.

There is no dispute the trial court employed that standard here. It is clear the trial court understood the prosecutor had the burden of proof and had to prove beyond a reasonable doubt Boror was ineligible for resentencing. The parties argued whether the evidence proved the requisite elements now required for felony murder, and the trial court discussed and weighed this evidence. The trial court then expressly found "that the evidence in this case shows to the standard required that Mr. Boror was the actual killer in this case." (§ 189, subd. (e)(1).) And even if Boror was not the actual killer, the trial court found the evidence established he was a major participant in the underlying crimes and acted with reckless indifference to human life. (§ 189, subd. (e)(3).)

In sum, the trial court applied the correct legal standard to deny Boror relief under section 1170.95.

## DISPOSITION

The order denying Boror's section 1170.95 petition for resentencing is affirmed.

_____

Richman, J.

WE CONCUR:

_____

Kline, P. J.

_____

Miller, J.

A160582